1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 15, 2023

3

SEAN F. McAVOY, CLERK

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

5

6    PAIGE K.,[1]                                No.    4:22-cv-5046-EFS

7                          Plaintiff,

8              v.                               **ORDER REVERSING THE
                                               DECISION OF THE ALJ AND
9    KILOLO KIJAKAZI, Acting                    REMANDING FOR FURTHER
     Commissioner of Social Security,           PROCEEDINGS**

10
                          Defendant.
11

12

13         Plaintiff Paige K. appeals the denial of benefits by the Administrative Law

14    Judge (ALJ).  Because the ALJ failed to provide adequate reasons supported by

15    substantial evidence for discounting medical opinions and Plaintiff's symptom

16    reports, the Court reverses the decision of the ALJ and remands this matter for

17    further proceedings.

18    //

19    /

20

21    _____

22    [1] For privacy reasons, Plaintiff is referred to by first name and last initial or as

23    "Plaintiff."  *See* LCivR 5.2(c).

      ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

## I.    Five-Step Disability Determination

2    A five-step evaluation determines whether a claimant is disabled.[2]  Step one

3  assesses whether the claimant is engaged in substantial gainful activity.[3]  Step two

4  assesses whether the claimant has a medically severe impairment or combination

5  of impairments that significantly limit the claimant's physical or mental ability to

6  do basic work activities.[4]  Step three compares the claimant's impairment or

7  combination of impairments to several recognized by the Commissioner to be so

8  severe as to preclude substantial gainful activity.[5]  Step four assesses whether an

9  impairment prevents the claimant from performing work she performed in the past

10  by determining the claimant's residual functional capacity (RFC).[6]  Step five

11  assesses whether the claimant can perform other substantial gainful work—work

12  that exists in significant numbers in the national economy—considering the

13  claimant's RFC, age, education, and work experience.[7]

14    If there is medical evidence of drug or alcohol addiction, the ALJ must then

15  determine whether drug or alcohol use is a material factor contributing to the

16

17  ───────────────

18  [2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

19  [3] *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

20  [4] *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).

21  [5] *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

22  [6] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

23  [7] *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

disability.[8]  If the remaining limitations without drug or alcohol use would not be disabling, disability benefits are not awarded.[9]  The claimant has the burden of showing that her drug or alcohol use is not a material contributing factor to disability.[10]

## II.    Background

In January 2019, Plaintiff filed an application for benefits under Title 2. Then, in August 2019, she also filed a Title 16 application.  She claimed disability based on depression, post-traumatic stress disorder (PTSD), obsessive-compulsive disorder (OCD), insomnia, alcohol abuse, pars defect (aka spondylolysis), cholelithiasis (aka gallstones), and suicidal thoughts.[11]  Plaintiff alleged an onset date of September 1, 2016.[12]  After the agency denied her applications initially and on reconsideration, Plaintiff requested a hearing before an ALJ.  In March 2021, ALJ Marie Palachuk held a hearing at which Plaintiff, a psychology expert, a medical expert, and a vocational expert testified.[13]

---

[8] 20 C.F.R. § 416.935(a).

[9] 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[10] *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

[11] AR 349.

[12] AR 311.

[13] AR 49–88.

1

**A.      Plaintiff's Hearing Testimony**

2          Plaintiff's testimony centered mostly on her mental-health symptoms,

3    neuropathy in her feet/legs, and the pain and limitations stemming from her pars

4    defect.  Regarding her mental health, Plaintiff testified to depression, anxiety,

5    disturbed sleep, and a lack of concentration.[14]  She said she was easily

6    overwhelmed and that there were periods when she would go out only "maybe once

7    a week or once every two weeks."[15]

8          Plaintiff stated that when she experiences a "breakout" of neuropathy in her

9    feet, they become painful and swollen.[16]  During such breakouts, she takes

10   medication that makes her "very tired, very groggy," and she must elevate her feet

11   about five times per day for roughly 30 minutes at a time.[17]

12         Plaintiff testified that her pars defect limits her ability to stand, sit, walk,

13   lift, bend, reach, and turn.[18]  On a typical day, her pars defect and back pain

14   require that she lie down 2–3 times for about 1–2 hours each (independent of her

15   need to elevate her legs due to neuropathy).[19]  She further explained that physical

16

17   _____

18   [14] AR 77–81.

19   [15] AR 80–81.

20   [16] AR 74–75.

21   [17] AR 74–75.

22   [18] AR 68–69.

23   [19] AR 72–73.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

activity can aggravate her pars defect, and she sometimes has a disk "slide out" of place, which will cause her to be immobile and bedridden for about three days.[20]

**B.    The ALJ's Decision**

In April 2021, the ALJ issued a written decision denying disability.[21]  As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since September 1, 2016, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: congenital pars defect, neuropathy in feet, major depressive disorder, generalized anxiety disorder, attention deficit hyperactivity disorder (ADHD), and substance-use disorder.[22]

- Step three: "Including the claimant's substance use, the severity of the claimant's impairments met the criteria of sections 12.04, 12.06, and 12.11."[23]  However, "[i]f the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments

---

[20] AR 68–72.

[21] AR 17–30.

[22] AR 19.

[23] AR 19, 21.

that meets or medically equals the severity of one of the impairments listed."[24]

- RFC: If Plaintiff stopped the substance use, she has the RFC to perform light work with the following exceptions.

> The claimant can perform postural movements occasionally, except never climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to extreme cold and hazards. The claimant is able to understand, remember and carry out simple, routine tasks. The claimant is able to maintain concentration, persistence, or pace on simple routine tasks for two-hour intervals between regularly scheduled breaks. The claimant needs a predictable work environment with seldom change and minimal judgment and decision making not effecting the safety of others. The claimant cannot work at fast-paced production rate of work. The claimant can have occasional and superficial interaction with the public and superficial interaction with coworkers. The claimant cannot work in crowds.[25]

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: If Plaintiff stopped the substance use, considering her RFC, age, education, and work history, she could perform work that existed in significant numbers in the national economy, such as merchandise marker, packager sorter, and routing clerk.[26]

---

[24] AR 22.

[25] AR 24.

[26] AR 29.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

- Substance use: "The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if [s]he stopped the substance use."[27]

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[28]  The ALJ therefore found Plaintiff not disabled.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[29]  Plaintiff timely appealed to the Court.

### III.  Standard of Review

A district court's review of the Commissioner's final decision is limited.[30] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[31]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

---

[27] AR 29.

[28] AR 24.

[29] AR 1–6.

[30] 42 U.S.C. § 405(g).

[31] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

mind might accept as adequate to support a conclusion."[32]  Because it is the role of

the ALJ to weigh conflicting evidence, the Court upholds the ALJ's findings "if they

are supported by inferences reasonably drawn from the record."[33]  Further, the

Court may not reverse an ALJ decision due to a harmless error—one that "is

inconsequential to the ultimate nondisability determination."[34]

## IV.    Analysis

Plaintiff argues the ALJ erred by (1) rejecting the disabling opinion of

treating mental-healthcare provider Angela Combs, ARNP, (2) improperly rejecting

Plaintiff's symptom reports, (3) rejecting the disabling opinion of examining

physician Lucy Peterson, MD, (4) failing to account for physical limitations arising

from Plaintiff's neuropathy, and (5) failing to address physical limitations arising

from her pars defect and back pain.[35]  For the reasons that follow, the Court holds

---

[32] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[33] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up).

[34] *Molina*, 674 F.3d at 1115 (cleaned up).

[35] ECF No. 9 at 9.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1    the ALJ reversibly erred by failing to provide adequate reasons for rejecting certain

2    testimony and medical opinions regarding Plaintiff's physical impairments.

3    **A.    Mental-Health Findings: Plaintiff fails to show consequential error.**

4    As a preliminary matter, the Court's review is necessarily informed by the

5    procedural posture of this case.  The ALJ started by finding that Plaintiff's mental

6    impairments *are* disabling.  The ALJ then went on to conclude that Plaintiff's

7    substance abuse is a contributing material factor to such disability, and the ALJ

8    denied disability on that basis.[36]  As the ALJ explained, "The record supports

9    improvement of the claimant's symptoms when she is not abusing alcohol and

10    taking her medication."[37]

11    On appeal, Plaintiff does not directly address whether or how she met her

12    burden of showing that her alcohol use was *not* a contributing material factor to

13    her disability.  Plaintiff does, however, suggest that the difference in her mental-

14    health symptoms is explained by the inherent waxing and waning of her mental

15    impairments.[38]  Even assuming Plaintiff's proposed interpretation of the medical

16

17

18

19

20

---

21    [36] AR 29.

22    [37] AR 24.

23    [38] *See* ECF No. 9 at 18.

1    evidence is reasonable, however, no error will lie so long as the ALJ's

2    interpretation is rational and supported by substantial evidence.[39]

3        1.    Substantial Evidence in Support

4        The ALJ found medical expert Kent Layton, PsyD—who testified at the

5    hearing and provided citations to substantial supporting evidence—to be "very

6    persuasive."[40]  As Dr. Layton and the ALJ both observed, "there were a lot of

7    normal mental status exams in the record when the claimant was on medication,

8    and the claimant even reported the medications helped her symptoms."[41]

9    Dr. Layton opined that Plaintiff's mental capabilities were improved "when she's

10   not drinking and she is on her medication."[42]  Indeed, a review of the longitudinal

11   record reveals substantial evidence indicating that Plaintiff tended to cease taking

12   her medications and report more severe mental-health symptoms during periods of

13

14

15

16   [39] See Burch v. Barnhart, 400 F.3d 676, 680–81 (9th Cir. 2005) ("Although the

17   evidence . . . may also admit of an interpretation more favorable to [the claimant],

18   the ALJ's interpretation was rational, and we must uphold the ALJ's decision

19   where the evidence is susceptible to more than one rational interpretation."

20   (cleaned up)).

21   [40] AR 22, 27.

22   [41] AR 27. See also AR 59–61 (Dr. Layton citing to, e.g., AR 870, 884, 893).

23   [42] AR 59.

1  alcohol use.[43]    Further, when questioned by Plaintiff's counsel, Dr. Layton

2  acknowledged that Plaintiff's mental-health symptoms could be expected to

3  sometimes wax and wane to a degree, but Dr. Layton went on to conclude that the

4  differences reflected in the record were better attributed to Plaintiff's periods of

5  using alcohol and going off her medications.[44]

6          Given Dr. Layton's well-supported testimony, it was reasonable for the ALJ

7  to interpret Plaintiff's longitudinal treatment history as indicating that Plaintiff's

8  alcohol use was a contributing material factor to her mental-impairment-based

9  disability; the ALJ's interpretation of the related medical evidence is rational and

10  supported by substantial evidence.  Plaintiff has therefore failed to show the ALJ

11  erred in this regard.

12

13  _____

14  [43] *See, e.g.*, AR 576 ("She is doing very well on medication . . . does report good

15  performance at work or school when taking medication and poor performance when

16  not taking medications."); AR 773 ("Her depression is well controlled on her current

17  medication regiment.  When she is not on her fluoxetine she feels passive suicidal

18  ideation . . ."; AR 864 ("Claimant stated that her symptoms are worse when she

19  drinks . . ."); AR 893 ("[S]he notes her medications are working well for her."); AR

20  987 ("started self-medicating with alcohol and has been drinking daily"); AR 884,

21  1004, 1011–12, 1015 (generally reflecting worsening mental-health symptoms

22  during periods of insobriety).

23  [44] *See* AR 60.

2.    <u>Harmless Error as to Mental-Impairment Findings</u>

After the ALJ initially found Plaintiff disabled at step five, Plaintiff failed to meet her burden of showing that her alcohol use is not a material contributing factor to such disability.[45]  As a result, even if the ALJ had erred at an earlier step in analyzing Plaintiff's mental impairments, the result would be the same, and such error would be harmless.[46]  The Court therefore need not examine the remainder of Plaintiff's arguments regarding her mental impairments and the ALJ's related findings, including the ALJ's assessment of ARNP Combs' medical opinion.

That said, neither the ALJ's decision nor the overall record link Plaintiff's alcohol use to any of her physical impairments.  The Court therefore proceeds to address Plaintiff's arguments relating to her physical impairments and limitations.

**B.    Physical-Health Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to provide adequate reasons for discounting her symptom reports.  Specifically, Plaintiff alleges that the ALJ failed to account for her "need to lie down and elevate her feet throughout the day due to swelling

---

[45] *See Parra*, 481 F.3d at 748.

[46] *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("ALJ errors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination." (cleaned up)).

1  and pain associated with neuropathy," as well as her "need to lie down due to

2  exacerbation of back pain resulting from complications of her pars defect, with

3  crunching pain and vertebral instability."[47]  The Court focuses its analysis on those

4  symptom reports.[48]

5          1.    Legal Standard

6          An ALJ is instructed to "consider all of the evidence in an individual's

7  record" to determine how symptoms limit a claimant's ability to perform work-

8  related activities.[49]  Factors for the ALJ to consider in evaluating the intensity,

9  persistence, and limiting effects of a claimant's symptoms include: (1) daily

10  activities; (2) the location, duration, frequency, and intensity of pain or other

11  symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type,

12  dosage, effectiveness, and side effects of any medication the claimant takes or has

13  taken to alleviate pain or other symptoms; (5) treatment, other than medication,

14  the claimant receives or has received for relief of pain or other symptoms; (6) any

15  non-treatment measures the claimant uses or has used to relieve pain or other

16

17

18  ───────────────

19  [47] ECF No. 9 at 9.

20  [48] *Cf. Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir.

21  2003) (noting that a reviewing court need "review only issues which are argued

22  specifically and distinctly").

23  [49] SSR 16-3p, 2016 WL 1119029, at *2.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

1   symptoms; and (7) any other factors concerning the claimant's functional

2   limitations and restrictions due to pain or other symptoms.[50]

3       Here, because there is no affirmative evidence of malingering, the ALJ was

4   required to consider the relevant factors and provide "specific, clear and

5   convincing" reasons supported by substantial evidence for rejecting Plaintiff's

6   symptom reports.[51]

7       2.   The Symptom Reports at Issue

8       Plaintiff testified that her pars defect and related back pain cause her to

9   need to lie down 2–3 times daily for about 1–2 hours at a time.[52]  Plaintiff also

10  stated that when her neuropathy breaks out, she must elevate her feet five times

11  per day for periods lasting about 30 minutes each.[53]  The ALJ did not expressly

12  discount these symptom reports; nor did the ALJ explain with any specificity why

13  the related restrictions were omitted from the RFC.

14  //

15  /

16

17

18  [50] SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).

19  [51] *See* 20 C.F.R. § 416.929(c); SSR 16-3p, 2016 WL 1119029, at *7; *Ghanim v.*

20  *Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at

21  1036).

22  [52] AR 72–73.

23  [53] AR 74–75.

a.    *The ALJ's findings regarding symptom improvement are inapplicable to Plaintiff's physical impairments.*

The Commissioner points out that "the ALJ emphasized that Plaintiff's symptoms improved when she was not abusing alcohol and taking her medication."[54]  Impairments which can be controlled effectively with treatment are not considered disabling, and evidence of sustained improvement may serve as a clear and convincing reason to reject a claimant's inconsistent symptom reports.[55] As previously mentioned, however, the ALJ's analysis regarding Plaintiff's symptom improvement and alcohol use relates only to Plaintiff's mental impairments.  The ALJ did not address whether (or to what extent) Plaintiff's physical impairments improved with treatment.  Moreover, nothing in the record connects Plaintiff's physical impairments to alcohol use or a lack of treatment.

b.    *The ALJ failed to adequately explain how Plaintiff's activities undermine her physical-symptom reports.*

While summarizing the evidence of record, the ALJ said "[t]he claimant's activities have been considered."  The ALJ also stated, "The undersigned notes that despite the claimant's limitations, she is able to engage in some basic daily

---

[54] ECF No. 12 at 6.

[55] *See Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

1   activities, such as caring for young children, using public transportation, and

2   completing household chores."[56]

3        The Commissioner correctly notes that some courts have found activities

4   similar to those noted by the ALJ to be a sufficient basis for rejecting a claimant's

5   reports of total disability.[57]   For example, in *Rollins v. Massanari*, the reviewing

6   court agreed with the ALJ that a "claim to have totally disabling pain was

7   undermined by [the claimant's] own testimony about her daily activities, such as

8   attending to the needs of her two young children, cooking, housekeeping, laundry,

9   shopping, attending therapy and various other meetings every week, and so

10  forth."[58]   Similarly, the court in *Ahearn v. Saul* concluded that substantial evidence

11  existed to discount the claimant's asserted mental-health limitations, based his

12  ability to "play video games and watch television for sustained periods, to use a

13  library computer a few times a week for two hours at a time . . . , to use public

14  transportation, to shop at stores, to perform personal care, to prepare meals, to

15  socialize with friends, and to perform household chores."[59]

16  //

17  /

18

19

20  [56] AR 27.

21  [57] *See* ECF No. 12 at 8–10.

22  [58] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

23  [59] *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

1    The record in this case, however, is more akin to that in *Trevizo v. Berryhill*,

2  where the court stated,

3       [T]here is almost no information in the record about [the claimant]'s
        childcare activities; the mere fact that she cares for small children
4       does not constitute an adequately specific conflict with her reported
        limitations.  Moreover, many home activities are not easily
5       transferable to what may be the more grueling environment of the
        workplace, where it might be impossible to periodically rest or take
6       medication.  That appears to be the case here, where [the claimant]'s
        childcare responsibilities permit her to rest, take naps, and shower
7       repeatedly throughout the day, all of which would be impossible at a
        traditional full-time job.[60]

8       This same reasoning applies equally to "using public transportation" and

9  completing household chores."[61]  After all, the significance of a claimant's activities

10  depends not only on the activity in question but also on the nature of both the

11  impairment and the symptom reports at issue; an ALJ must show that an

12  inconsistency truly exists before relying on an activity to reject the claimant's

13  symptom reports.[62]  And nothing about the activities listed by the ALJ is

14

15  _____

16  [60] *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (cleaned up); *id.* at 672.

17  ("She reported that her childcare responsibilities required feeding and bathing the

18  children."). *Cf. also, e.g.*, AR 72 (Plaintiff testifying that although she cares for her

19  two children, such as by bathing them, she is unable to physically pick them up.).

20  [61] *See* AR 27.

21  [62] *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). *See also Vertigan v.*

22  *Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (The Ninth Circuit has "repeatedly

23  asserted that the mere fact that a plaintiff has carried on certain daily activities,

1   inherently inconsistent with Plaintiff's testimony regarding her pars defect and/or

2   neuropathy.[63]   Absent further evidence regarding the specific physical demands of

3   Plaintiff's activities and/or a more-detailed explanation by the ALJ regarding

4   perceived inconsistencies, the activities identified in the ALJ's decision do not serve

5   as a clear or convincing reason to discount Plaintiff's physical-symptom reports.

6                c.     *The ALJ failed to explain why any of the cited medical evidence*

7                       *undermined Plaintiff's physical-symptom reports.*

8           The Commissioner also argues Plaintiff's physical-symptom reports were

9   properly rejected because "the ALJ cited Plaintiff's normal musculoskeletal

10  examinations and motor strength, as well as her ability to do tandem walking and

11  heel and toe walking."[64]  Objective medical evidence is a relevant factor for the ALJ

12  to consider when assessing a claimant's symptoms.[65]  But the normal medical

13

14  _____

15  such as grocery shopping, driving a car, or limited walking for exercise, does not in

16  any way detract from her credibility as to her overall disability.").

17  [63] *See, e.g.*, AR 401 (Plaintiff reporting that her cooking ability is limited to meals

18  such as frozen dinners and microwavable foods.); AR 870 (Plaintiff explaining that

19  she lives with a friend and helps around the house with some cooking and cleaning

20  but that she is unable to do certain chores, such as taking out the trash, and that

21  "prolonged cooking while standing exacerbates her back pain.").

22  [64] ECF No. 12 at 11 (citing AR 25–26).

23  [65] *See Rollins*, 261 F.3d at 857.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

findings now relied upon by the Commissioner comprise only a portion of the various, mixed medical findings that the ALJ recited in her summary of the medical evidence.

The ALJ acknowledged that Plaintiff has a congenital pars defect in her back as well as neuropathy in her feet.[66]  The ALJ found that both conditions "could reasonably be expected to produce some of the alleged symptoms."[67]  And the ALJ provided a fair recitation of Plaintiff's medical history by citing both normal and abnormal medical findings.[68]  Yet, of all the medical findings listed therein, the ALJ 's decision offers no indication as to which, if any, she considered to be inconsistent with Plaintiff's claims of needing to lie down and/or elevate her feet.[69]

---

[66] *See* AR 25–26.

[67] *See* AR 24.

[68] *Cf.* AR 25 (ALJ summarizing a December 2018 examination in which Plaintiff "had diffuse lower lumbar spine paraspinal region tenderness" but also normal "straight leg-raising test and heel and toe walking" as well as a "normal range of motion of the lumbar spine" (citing AR 743–49)).

[69] For example, the ALJ offered no reason why Plaintiff's normal straight leg-raising test and/or her ability to tandem walk for purposes of a brief physical examination meant that—despite suffering from pars defect—her condition would not require her to lie down to rest 2–3 times per day.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

     Even if the record arguably supports finding specific inconsistencies between Plaintiff's testimony and the recited medical evidence, the ALJ included no such findings in her decision, and the Court cannot uphold findings that were never made.[70]  It is not the role of this Court to make its own credibility determinations based on nothing more than inferences drawn from the ALJ's summary of the medical evidence.[71]  Rather, "the credibility determination is exclusively the ALJ's to make," meaning the ALJ must do more than recite a chronology of the medical records and then jump to setting forth whatever RFC restrictions the ALJ deems consistent with the objective medical evidence.[72]  The ALJ must explain *why*

---

[70] *Cf. See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015); *cf. also Molina*, 674 F.3d at 1111 (A reviewing court "must uphold the ALJ's *findings* if they are supported by inferences reasonably drawn from the record." (emphasis added)).

[71] *See Brown-Hunter*, 806 F.3d at 494 ("We are constrained to *review* the reasons the *ALJ* asserts.  Thus, the inconsistencies identified independently by the district court cannot provide the basis upon which we can affirm the ALJ's decision.").

[72] *See id.* at 489 ("[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination.").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 20

1  specific evidence is inconsistent with the symptom reports being rejected.[73]

2  Because the ALJ did not do so here, the cited medical evidence falls short of being a

3  specific, clear, or convincing reason to reject Plaintiff's allegations of needing extra

4  rest breaks to lie down and elevate her feet.

5              d.    _The ALJ's error is consequential._

6        At the hearing, the vocational expert testified that the need to lie down "one

7  hour a day, one to two times per day" would preclude competitive employment.[74]

8  The vocational expert also said competitive employment would be independently

9  foreclosed if a person needed to elevate her legs "two to three times per day for 30

10  minutes each time."[75]  Had either of such limitations been included in the RFC,

11  Plaintiff would have been found disabled.  The ALJ's error is therefore

12  consequential.[76]

13

14

15

16  —————————————

17  [73] _See Brown-Hunter_, 806 F.3d at 489_; Ghanim_, 763 F.3d at 1163 ("General

18  findings are insufficient; rather, the ALJ must identify what testimony is not

19  credible and what evidence undermines the claimant's complaints.") (quoting

20  _Lester v. Chater_, 81 F.3d 821, 834 (9th Cir. 1995)).

21  [74] AR 87.

22  [75] AR 86–87.

23  [76] _See Molina_, 674 F.3d at 1115.

1

### 3.    Medication Side Effects

2

The regulations instruct that an ALJ consider the "side effects of any

3

medication an individual takes or has taken to alleviate pain or other symptom."[77]

4

Here, the ALJ did not address Plaintiff's testimony and other evidence in the

5

record indicating that her prescribed medication for neuropathy (gabapentin)

6

carries the side effects of making her "very tired, very groggy."[78]  On remand, the

7

ALJ is to address the side effects of Plaintiff's medication.

8

**C.    Medical Opinions: Plaintiff establishes consequential error.**

9

Plaintiff argues the ALJ improperly rejected the disabling opinion of

10

examining physician Lucy Elizabeth Peterson, MD.[79]  The Court agrees.  The ALJ

11

erred by failing to adequately explain why she discounted Dr. Peterson's medical

12

opinion.

13

### 1.    Applicable Standard

14

The ALJ was required to consider and evaluate the persuasiveness of the

15

medical opinions and prior administrative medical findings.[80]  The factors for

16

evaluating the persuasiveness of medical opinions and prior administrative

17

18

_____

19

[77] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p (S.S.A. Oct. 25, 2017),

20

*available a*t 2017 WL 5180304.

21

[78] AR 74–75.

22

[79] ECF No. 9 at 9–13.

23

[80] 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).

1    medical findings include, but are not limited to, supportability, consistency,

2    relationship with the claimant, and specialization.[81]  Supportability and

3    consistency are the most important factors, and the ALJ must expressly explain

4    how she considered the supportability and consistency factors when reviewing the

5    medical opinions.[82]

6        2.    Dr. Peterson's Medical Opinion

7        On June 13, 2019, Dr. Peterson conducted a consultative physical evaluation

8    of Plaintiff.[83]  In addition to performing a physical examination, Dr. Peterson

9    reviewed medical records from September and December 2018.  As relevant here,

10   Dr. Peterson noted upon examination that Plaintiff "had tenderness to palpation

11   and compression of the right and left paravertebral regions and the midline

12   lumbosacral region," and that there was "actually 'crunching' and instability of the

13   pars defect spondylolysis to palpation."[84]  Dr. Peterson diagnosed "[l]umbrosacral

---

15   [81] 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

16   [82] *Id.* §§ 404.1520c(b)(2), (c); 416.920c(b)(2), (c)(1)–(5); *Woods v. Kijakazi*, 32 F.4th

17   785 (9th Cir. 2022) ("The agency must articulate . . . how persuasive it finds all of

18   the medical opinions from each doctor or other source and explain how it

19   considered the supportability and consistency factors in reaching these findings.")

20   (cleaned up).

21

22   [83] AR 869–74.

23   [84] AR 873.

1    spine chronic low back pain with associated pars defect," saying it carried "a poor

2    prognosis."[85]

3        In providing a functional assessment of Plaintiff's physical limitations,

4    Dr. Peterson stated the following:

5        Maximum standing and walking capacity: less than two hours.  She is
        limited by the chronic lumbosacral sprain, possible degenerative joint
6        disease, and the pars defect.

7        Maximum sitting capacity: less than two hours.  The justification for
        limitation is the pars defect and chronic lumbosacral sprain.
8
        Assistive devices: the claimant uses a Velcro elastic brace of her back
9        which is, in my opinion, medically necessary at all times.

10        Maximum lifting and carrying capacity: less than 10 lbs occasionally
        and frequently.  This limitation is imposed by her chronic lumbosacral
11        sprain and the pars defect.

12        Postural activities: she may only occasionally crawl, kneel, and climb,
        frequently crouch, never stoop and has no limitations to balance.  The
13        other activities with limitations are limited by the chronic
        lumbosacral sprain and the pars defect.
14
        Manipulative activities: she may occasionally reach as this activity is
15        associated with exacerbation of pain which is due to the chronic
        lumbosacral sprain and pars defect.[86]
16
17        3.    The ALJ's Lack of Explanation

18        The ALJ's only explanation for discounting Dr. Peterson's medical opinion

19    was that "it is not consistent with the findings on exam, such as normal strength

20

21    _____

22    [85] AR 873.

23    [86] AR 874.

and [Plaintiff's] ability to tandem walk, or overall medical evidence of record."[87]

The ALJ neither articulated her consideration of the supportability factor nor

explained how the highlighted findings (or any other evidence) contradicted

Dr. Peterson's medical opinion.  For example, the ALJ offered no reason why

someone with the ability to briefly tandem walk for purposes of an exam—

particularly if done "slowly and with a mild amount of pain"[88]—should also be able

to lift more than 10 pounds occasionally, reach on more than an occasional basis, or

stand, walk, and/or sit for at least two hours.

When assessing medical opinions, "[t]he ALJ must do more than state

conclusions.  [Sh]e must set forth h[er] own interpretations and explain why they,

rather than the doctors' are correct."[89]  "[A]n ALJ errs when [s]he rejects a medical

opinion or assigns it little weight while doing nothing more than ignoring it,

asserting without explanation that another medical opinion is more persuasive, or

criticizing it with boilerplate language that fails to offer a substantive basis for

---

[87] AR 26.

[88] *See* AR 872 ("She ambulates from the waiting room to the clinic, which was a

distance of 20 to 30 feet, slowly and with a mild amount of pain."). *Cf. also*

*Vertigan*, 260 F.3d at 1050 ("A patient may do . . . activities *despite* pain for

therapeutic reasons, but that does not mean she could . . . engage in similar

activity for a longer period given the pain involved.").

[89] *Reddick*, 157 F.3d at 725.

1    h[er] conclusion."[90]  Further, an ALJ must consider the basis for the limitations

2    and not discount them because of nonrelevant normal findings.[91]

3        Here, the ALJ erred by failing to explain the relevance of the cited normal

4    medical findings or why they are inconsistent with Dr. Peterson's medical opinion.

5    The ALJ also erred by failing to adequately address the supportability factor when

6    assessing Dr. Peterson's medical opinion.

7        4.    Consequential Error

8        The ALJ omitted from the assessed RFC several material limitations

9    included in Dr. Peterson's medical opinion.  For instance, although the ALJ did

10    limit the duration of Plaintiff's work tasks to "two-hour intervals between regularly

11    scheduled breaks,"[92] Dr. Peterson's opinion set Plaintiff's maximum capacity for

12    standing, walking, and sitting each at "*less* than two hours."[93]  The ALJ also

13    omitted any restrictions related to manipulative activities, such as reaching.

14

15

16    ───────────────

17    [90] *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014).

18    [91] *See Ghanim*, 763 F.3d at 1164 (finding the ALJ erred by rejecting the claimant's

19    symptoms resulting from anxiety, depressive disorder, and PTSD on the basis that

20    claimant performed cognitively well during examination and had a generally

21    pleasant demeanor).

22    [92] AR 24.

23    [93] AR 874 (emphasis added).

1  Further, light work is defined as involving lifting up to 20 pounds occasionally,

2  which is in contrast to the 10-pound limit set forth by Dr. Peterson.[94]

3      According to the vocational expert's testimony, had the limitations set forth

4  in Dr. Peterson's medical opinion been incorporated into the RFC, Plaintiff would

5  have been found disabled.[95]  The ALJ's error was therefore consequential and

6  requires reversal.

7  **D.    Remand for Additional Proceedings**

8      Plaintiff seeks a remand for payment of benefits.  However, further

9  proceedings are necessary because disability is not clearly established based on

10  Plaintiff's physical impairments.[96]  Because the ALJ's weighing of Plaintiff's

11  testimony and the medical evidence necessarily impacted other aspects of the

12  sequential analysis, the Court remands this case for the ALJ to conduct a new step-

13  five analysis as to Plaintiff's physical impairments.

14      On remand, if the ALJ discounts Plaintiff's physical-symptom reports, the

15  ALJ must articulate clear and convincing reasons for doing so.[97]  General findings

16

17  _____

18  [94] *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

19  [95] *See, e.g.*, AR 86 (vocational expert testifying that if reaching was limited to only

20  occasionally, the three identified positions would be eliminated).

21  [96] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison*, 759 F.3d at

22  1020.

23  [97] *Ghanim*, 763 F.3d at 1163.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 27

are insufficient.[98]  The ALJ must identify what symptoms are being discounted and what evidence undermines these symptoms.[99]

The ALJ on remand is to also expressly consider the "side effects of any medication [Plaintiff] takes or has taken to alleviate pain or other symptom."[100]

With respect to the medical-opinion evidence concerning Plaintiff's physical impairments, the ALJ on remand must meaningfully articulate the supportability and consistency of each medical opinion.  If the ALJ finds a medical opinion to be inconsistent with other evidence of record, the ALJ must identify such evidence and explain—with specificity—how it undermines the medical opinion in question.[101]  If necessary, the ALJ shall  further develop the record and call a medical expert regarding Plaintiff's physical impairments—particularly an expert qualified to opine as to Plaintiff's pars defect and neuropathy, including what symptoms and functional limitations those conditions could reasonably be expected to cause.

---

[98] *See Garrison*, 759 F.3d at 1010.

[99] *Id.* (quoting *Lester*, 81 F.3d at 834, and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[100] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p (S.S.A. Oct. 25, 2017), *available a*t 2017 WL 5180304.

[101] *See Reddick*, 157 F.3d at 725.

## V.    Conclusion

Because Plaintiff has not met her burden of proving that alcohol use is not a material contributing factor, Plaintiff has not demonstrated the ALJ consequentially erred in denying disability based on Plaintiff's mental impairments.[102]  Plaintiff has, however, shown that the ALJ consequentially erred in assessing Plaintiff's physical impairments.  Therefore, as to Plaintiff's physical impairments, the ALJ is to further develop the record (if necessary) and to reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

4.    The decision of the ALJ is **REVERSED,** and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

///

//

/

---

[102] *See Parra*, 481 F.3d at 748.

1       5.      The case shall be **CLOSED**.

2       IT IS SO ORDERED.  The Clerk's Office is directed to file this order and

3   provide copies to all counsel.

4       DATED this 15th day of August 2023.

5

6       _____
        EDWARD F. SHEA
        Senior United States District Judge

7

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 30